CHRISTOPHER
*vs*
COVINGTON AND
SMITH.

out a suit at law, and if the bond contain obligations beyond those required by the order of the Chancellor, they will, to that extent, be disregarded.

---

# Christopher *vs* Covington and Smith.

ERROR TO THE MADISON CIRCUIT.

*Fraudulent conveyances. Sheriffs. Executions. Torts.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

JAMES HEATHERLY having conveyed to two trustees, (one of whom was his creditor,) a male slave and various articles of personal property, (described as constituting his whole estate legally subject to his debts,) *in trust*, for sale and distribution among all his creditors, who were numerous—two of them, who seem not to have assented to the conveyance, immediately afterwards sued him at law and obtained judgments. Executions of *fi. fa.* which were issued on these judgments, were levied on the said slave and sundry other articles embraced in the deed of trust, which were sold by the sheriff for $801 68.

TROVER.

*Case* 119.

*April* 27.

The case stated.

2bm357
f129    545

CHRISTOPHER
*vs*
COVINGTON AND
SMITH.

Judgment of the
Circuit Court for
plaintiff below.

After the sale of all the property levied on, except the slave, and between the date of the levy on and sale of him, the trustees brought this action of *trover* against the sheriff; and, on the trial on the general issue, verdict and judgment were rendered for $801 68, in damages.

Against that judgment several objections are now urged in this Court.

1. The plaintiff's counsel insist that the deed of trust was fraudulent and void, as to the judgment creditors, and that it was the duty of the jury to have so found.

A deed of trust of all the debtors property, including stock and a growing crop, which provides for a sale by the trustees, for the benefit of all the creditors, after the expiration of about 3 months, is not necessarily fraudulent, and if the intention be to mature the crop and fatten the stock, is not, *per se*, fraudulent.

There is nothing apparent on the face of the deed which would prove that it was intended to hinder or delay any creditor. It purported to be for the benefit of all equally; and although it prescribed a sale after the expiration of about three months, upon notice and also upon a short credit, yet, as it did not otherwise restrict the power of sale, the inevitable delay that must have resulted from a sale as authorized, should not, in our opinion, be deemed such as necessarily to evince a fraudulent design to obstruct or otherwise injure any of the creditors, In every such assignment some delay is unavoidable. It is not, therefore, the fact of delay, but its character, and the motive which actuated it that is deemed fraudulent in law. It is proved that the avowed object of the parties to the deed, for postponing a sale for the prescribed time, was a wish to allow time for fattening the hogs and maturing the growing crop embraced in the conveyance; and if this were the only motive, the delay was not, in our judgment, fraudulent; or in other words, the fact of delay does not, *per se*, prove that the deed was made to hinder, delay or defraud creditors.

And we are of the opinion that it was not the duty of the jury to find that the conveyance was fraudulent.

For the debtor to remain in the possession of property so conveyed, is not, *per se*, fraudulent.

Nor should such a conveyance, in trust, be deemed, *per se*, fraudulent, merely because Heatherly was permitted to remain in possession of the property conveyed.

2. The next objection to the judgment is, that the Circuit Court refused to permit the plaintiff in error to prove that, after the execution of the deed, Heatherly said that his object in making the conveyance was to prevent a

sacrifice of his property and enable him to pay all his creditors.

But that fact, if it be admitted to be evidence against Heatherly, of a fraudulent intent on his part, was not, in our opinion, admissible against the trustees and beneficiaries, because the declaration was made after the delivery of the deed; and though he was then in the possession, we cannot perceive how that circumstance can make his declaration, not as to his possession, but as to his motive in making the deed, competent evidence. We cannot consider it admissible as part of the *res gestae.*

3. The plaintiff in error also offered to prove that about the date of the conveyance in this case, *Heatherly* had made *to other creditors a fraudulent conveyance of his land;* but the Circuit Judge did not permit him to do so; and this also is objected to as erroneous. But it seems to us that the judgment ought not to be reversed on that ground. 'The fact of fraud in another case would certainly be very remote and anomalous evidence of fraud in this case; and an investigation of such previous and independent fraud might not only have taken the opposite party by surprise, but have involved the Court in a collateral, and perhaps protracted and vexatious inquiry between strangers to this suit. But, waiving all this, we will not reverse the judgment merely because the Court did not permit such a collateral investigation, when the party proposing it offered no specific proof, propounded no question to any witness, nor showed, in any other way, that he could prove any fact which would even tend to establish the broad-cast charge that there had been fraud in another act of *Heatherly's* life.

4. It is also urged here that, as the slave had not been sold when this suit was brought, the recovery as to him was unauthorized. But, if it be admitted that the sheriff might have levied on the equity of redemption, and that, therefore, having a legal right of caption under the execution, there was, in judgment of law, no proof of conversion until there had been an illegal sale of the absolute property; yet, nevertheless, we are clearly of the opinion that the subsequent tort in illegally selling, opera-

CHRISTOPHER
*vs*
COVINGTON AND
SMITH.

The declarations of grantor, after the delivery of a deed, are not competent evidence against the grantee or others interested in the subject of the conveyance.

It is not competent to prove a fraudulent intent in a conveyance in trust, to prove that the grantor had previously been guilty of making a fraudulent conveyance to another—*Argu.*

Though a sheriff may lawfully levy an execution on property mortgaged, yet he may be guilty of illegally selling, and by such illegal assumption, be guilty of a conversion, *ab inito,* and the acts of the sheriff after the institution of the suit

CHRISTOPHER
*vs*
COVINGTON AND
SMITH.

are competent to show the original intention in taking.

A creditor who is provided for with others, in a deed of trust, but who has never assented to the deed, levies his execution on the trust property. In a suit by the trustee, in which a recovery is had for the illegal seisure against the sheriff and the creditor, the latter has no claim to any abatement in the extent of the recovery on account of his interest as a *cestui que trust* in the deed.

ted, by relation, on the original levy, so as to make it an illegal assumption of dominion, and therefore, a conversion, *ab initio.*

The sale proved the illegal intention with which the levy was made, and therefore, by proving that the levy had been for an unauthorized purpose, and was, consequently, tortious, it proved that, in making that levy, the sheriff was guilty of a conversion, for which this action was maintainable.

5. The plaintiff's counsel also argued that, as the execution creditors were beneficially entitled to a portion of the property sold by the sheriff, their distributive interests ought to have been deducted by the jury; and that, therefore, the assessment was exorbitant. But this position also is, in our opinion, indefensible. The legal title being in the plaintiffs in the action, they had a right to recover to the whole extent of the damage to their legal interest; and any equitable right which the beneficiaries may have, can be made available in equity only. This principle has been, heretofore, recognized and applied by this Court in such cases as this, and seems to be perfectly consistent with all analogy in actions on legal titles.

6. The last objection to the judgment, is that the jury, in assessing damages, included about $6 for which some wool had been sold by the sheriff, and which, as assumed in argument, was not embraced by the deed of trust.

We are strongly inclined, however, to the conclusion that, though the wool is not specifically mentioned in the deed, it was intended to be embraced, and should, therefore, be deemed to have been vested in the trustees. But, however this may be, we would not be disposed to reverse the judgment for $801 68 merely because, in the assessment, $6 had been included improperly, on account of the wool; for if the plaintiffs in the action were entitled to any thing, they were clearly entitled to the value of *their* property sold by the sheriff; and it is evident, not only that the verdict corresponds precisely with the amount for which the sheriff sold the whole property, but that this sum is less than the real value of the property, excluding the wool. Consequently, even if the price of

the wool be deducted, the verdict is not higher than it ought to have been, upon the hypothesis that any verdict for the plaintiffs in the action was proper; and, as already intimated, we are of the opinion that the jury had a right, upon the law and the facts of the case, to find for the plaintiffs.

Wherefore, the judgment of the Circuit Court must be affirmed.

*Owsley & Goodloe* for plaintiff; *Turner* for defendants.

### PETITION FOR A RE-HEARING,
#### (By Owsley & Goodloe.)

THE counsel for the plaintiff in error, have carefully examined the opinion delivered in this case, and feel themselves impelled, by a sense of duty to their client, to ask of the Court a reconsideration of it. They are not unapprised that the case has been elaborately argued and kept under advisement by the Court, for some time. This does not, however, weaken the firmness of their convictions, that some of the principles upon which the case is made to turn are unsound.

The facts of the case—James B. Heatherly being indebted beyond his ability to pay, in the midst of his solicitations to his creditors not to sue him, pledging to them his honor, that he was able to pay all, and would, under no circumstances, incumber his property by mortgage or deed of trust; without the knowledge, consent or request of a single creditor, on the 13th day of May, 1841, secretly conveyed all his property to the defendants, in trust for all his creditors equally, with a provision in the deed, that the trustees, "*on or after the 1st September, 1841,* should proceed to advertise and sell, upon three months credit." One of the trustees is not a creditor, the other is to the amount of $125, but his debt is stated in the deed at $175.

The trustees accepted the trust, but when, does not appear, as their indorsement of acceptance on the deed is without date, and there is no other proof upon the subject in the record. Heatherly remained in the possession of the property, using and exercising acts of owner-

ship over it, until the 12th of June, 1841, when the plaintiff in error, as deputy sheriff, levied four executions upon part of it, and on the 2nd July, 1841, sold a portion, and on the 9th of August thereafter, sold negro Joe. On the 5th July, 1841, this action of trover and conversion was brought by the trustees against the deputy sheriff, and a recovery had, for *the full value of all the property* levied upon. The plaintiffs proved by the draftsman of the deed, that Heatherly, at the making of the deed, stated, that his object in postponing the sale until *"on or after the 1st. September,"* was to enable him to raise his crop and put his stock in order. It was also in proof that the trustee, Covington, stated that the object in postponing the sale, was the same as stated by Heatherly. There was no proof that a single creditor, except the trustee, Smith, assented to the deed after it was made, and that there was *"fraud"* in his debt to the extent of fifty dollars of it.

It is such a deed as this, surrounded by such circumstances, without a single additional mitigating one, that this Court, in the opinion delivered, has sustained as valid and not fraudulent.

We would respectfully ask if the deed, upon its face, does not exempt the property from sale until after the 1st day of September? Had the trustee any authority to sell earlier? Could a court of chancery have decreed a sale earlier without Heatherly's consent? We are satisfied that the answer to each of these interrogatories must be in the affirmative. And is it no delay to creditors to exempt the creditor's property from sale three and a half months? It might, with the same propriety, be for twelve, eighteen or twenty-four months. The one is as palpable a violation of the statute as would be the others!

But the Court say, "in all such assignments some delay is unavoidable." This is conceded—but it is far from concluding this case. Such delay as would necessarily occur in a prudent and ordinarily diligent execution of the trust, may not render the deed void; but we insist that it is a very different question, from a direct stipulation in the face of the deed, for delay, for a specified time. To say that the latter is legal, would, in our opinion, take

from the creditor all option as to the time of collecting his debt, and place it at the choice of the debtor—one of the obvious evils intended to be guarded against by the statute.

The Court say, in the opinion delivered: "It is not the fact of delay, but its character and the motive which dictated it, that is deemed fraudulent in law. It is proved that the avowed object of the parties to the deed, for postponing a sale, for the prescribed time, was a wish to allow time for fattening the stock and maturing the growing crop, embraced in the conveyance, and if this were the only motive, the delay was not, in our judgment, fraudulent; or in other words, the fact of delay does not, *per se*, prove that the deed was made to hinder, delay or defraud creditors." Now we respectfully insist, that a deed which, upon its face, stipulates for delay, is fraudulent under the statute, whether the delay be for a long or short period, or beneficial or injurious to creditors, in the opinion of the debtor. Creditors have a right, at their own time, to subject their debtors property and determine whether delay is beneficial or injurious; nor is any other motive of the debtor, than an intention to delay, necessary to destroy the deed.

Upon what other principle was the case of *Ward* vs *Trotter*, (3 *Monroe*, 1,) decided. The deed in that case stipulated that it was made for the purpose of preventing his property from being sacrificed, and to enable the grantor to pay all his debts, and recites that his property was ample for that purpose. Does not such a deed appear honest and beneficial to creditors, and if such was its *character* and only *motive*, is it not valid under the principles laid down in the opinion under consideration? Yet Chief Justice Boyle, in delivering the opinion in that case, says, such an intent is evidently dishonest and unlawful, and a conveyance made with that intent or purpose is forbidden by the statute against frauds and perjuries, and declared void against creditors and purchasers. In the petition for a re-hearing, presented in that case, it was contended, that "the delay of creditors is not enough to avoid the deed; it must have been made or contrived of fraud, malice, covin or collusion." But the Court

overruled the petition and affirmed the doctrine laid down in the opinion. The same doctrine is reiterated in the case of *Bucklin* vs *Thompson*, (1 *J. J. Marshall*, 226,) Chief Justice Robertson, who delivered the opinion in that case, says: "If a deed on its face, show that it was made with the design of hindering or delaying any creditors, no matter what may be the actual or ostensible consideration, it is, *per se*, fraudulent as to them." From these authorities, we contend, that the *intent to delay* is itself unlawful, and destroys the deed, whether that delay be long or short, or for a good or bad motive, and where that intent is apparent upon the face of the deed itself, it is intraversible evidence of fraud.

2. The rejected statements of Heatherly—

After the plaintiffs had introduced the statements of Heatherly, made at the execution of the deed, for the purpose of showing a good motive for postponing the sale, and when there was no proof as to when the trustees had accepted the deed, and that Covington was not a creditor, and no creditor had requested the making of the deed, the defendant offered to prove that Heatherly stated, a day or so after the deed was made, that his intention in making the deed, was to prevent his property from being sacrificed under execution; and this evidence was rejected by the Circuit Court, and this Court, in the opinion delivered, has sustained the opinion of the Circuit Court. Waiving for the present, that it was not competent to introduce the subsequent declarations of the grantor, to defeat the title of the grantee, was it not competent to introduce the statements of the grantor for the purpose of impeaching his prior statements. The grantees were not content to rest the case upon the face of the deed, but called for the statements of the grantor, made at its execution, for the purpose of showing a good and lawful intent, and surely it was competent for the defendant to impeach that statement, by showing that the grantor made a different one at other times.

But this Court, in the case of *Sanders* vs *Alexander*, (3 *J. J. Marsh*. 302,) permitted the declaration of the grantor, made subsequent to the execution of the deed of

trust, to be given in evidence, to show the intention of the grantor in making the deed.

But the point in the opinion of which we chiefly complaini s that in which it is held, that the plaintiffs had a right to recover in this action for the conversion of the negro man, Joe. This writ of error was sued out after the decision of the case of *Fugate* vs *Clarkson*, at the fall term, and although they entertained a confident opinion that the deed was fraudulent upon its face, yet they felt, in advising the prosecution of the writ of error, that the principles settled in that case was conclusive as to the liability of their client, for the price of Joe. The Court, in that case, after stating that the sheriff had a right to levy upon the equity of redemption and take possession of the property, say: "His (the sheriff's) expressed determination to disregard the mortgage, cannot be judicially recognized as an illegal act, or as sufficient proof that he had violated the law in taking the property, or would, in fact, violate it in the sale; notwithstanding such declaration, he might sell, subject to the mortgage, as he would still have the indisputable right to do, &c."

That the creditors, whose executions were levied upon Joe, had a right to sell the equity of redemption, is not controverted in the opinion, and is sustained by the case of *M'Kinley* vs *Combs*, (1 *Monroe,* 106.)

The Court, however, say, that although the levy was legal, "nevertheless we are clearly of opinion that the subsequent tort, in illegally selling, operated by relation on the original levy, so as to make it an illegal assumption of dominion, and therefore, a conversion *ab initio.*" We find adjudged cases in the books where, in the actions of trespass and replevin, parties by the illegal use and exercise of an authority, became trespassers *ab initio,* but this is the first case, so far of our researches have extended, in which it has been held that a party can be guilty of a conversion by relation. Concede that the subsequent conversion shows the original taking to have been tortious, yet the party complaining has waived the tort, in the form of his action; and surely subsequent evidence that the party intended a tort, when he took, cannot re-

suscitate it and make it the foundation of a recovery, or evidence of conversion.

The conversion is the gist of the action, and the party's right accrues from the time of the conversion, which was when the sale was made. But conceding that a party can be guilty of conversion by relation—to what period shall it relate in this case? Certainly to the time when the sheriff formed the intention to violate his duty, by selling the absolute estate and not the equity of redemption; and that period is a question of fact to be found by the jury, and not one of law, and that fact has not been found by the jury. But we maintain that the fair inference from the whole testimony in the case is, that Heatherly was to remain in the possession of the property until the day of sale, and the trustees were not to take possession prior to that time. The Court, in the opinion delivered, concede that the object of the parties in postponing the day of sale, was to enable Heatherly to raise his crop and put his stock in order. The whole property conveyed was stock, farming utensils, and Joe; the use of all which, by Heatherly, was necessary to fulfil the objects of the parties. If this be true, what right of possession was there in the trustees when this action was brought? Even supposing it was doubtful who was entitled to the possession, that fact ought to have been referred to the jury, and the instruction given by the Court, at the instance of plaintiffs, was, for that cause, erroneous. This Court, in the case of *M'Isaac* vs *Hobb*, (8 *Dana*, 270,) in remarking upon an instruction, similar to the one under consideration, use the following language: "It is obvious that the instruction disregards the question, whether at the time the negros were taken, they were in the possession of the mortgagor, and if so, whether they were there by any arrangement with the mortgagee, which may have deprived him or those claiming under him, of the right of immediately re-taking the possession. And as the evidence conduced *in some degree*, to prove that the mortgagor was in possession under such arrangement, the termination of which is uncertain; and as, moreover, it is a fundamental principle of this action, that the plaintiff must, at the time of the taking, have had the posses-

sion, or the immediate right to possession, the instruction is clearly erroneous, either in assuming the fact, that the mortgagee, or some one claiming under him, had the possession, or the immediate right of possession, which the Court had no right to assume, or in declaring whatever might be the fact in this respect, the plaintiff or mortgagee had a right to recover, which is incorrect in point of law."

With an authority so conclusive upon this question, we pass to the 5th and last proposition intended to. be discussed, viz : Can this action be maintained against a deputy sheriff for *a conversion*, by virtue of his office and under legal process.

This question was not discussed at the bar; is not noticed in the opinion, but is one well worthy of consideration.

That the high sheriff is answerable for the conversion complained of, is too clear to admit of doubt: See *Commonwealth for Davy* vs *Stockton*, (5 *Monroe*, 193,) and the authorities there cited; *Moore's adm'r. vs Downey, &c.* (3 *Hen. and Munford's Reports*, 127,) and the authorities there cited.

Where *the* action is founded upon a breach of the duty of the office of sheriff, it must be brought against the principal and not the deputy, though it be for the default of the latter: *Owens* vs *Gatewood*, (4 *Bibb*, 494;) *Cameron* vs *Reynolds*, (*Cowpers Reports*, 406.) The high sheriff is alone liable, (1 *Wash*. 159.)

The levy and sale in this case, was under legal process and by virtue of the office of Christopher, as deputy sheriff. He had legal authority to levy and take possession, and if liability attaches, it is for selling a greater interest than he had a right to sell. A re-hearing is asked.

Owsley & Goodloe.

Response

By Chief Justice Robertson.

There can be no doubt upon either reason or authority, that unless *Heatherly's intention* in making the deed was

CHRISTOPHER
*vs*
COVINGTON AND
SMITH.

CHRISTOPHER
vs
COVINGTON AND
SMITH.

to delay his creditors, the conveyance was not made *to delay* them, and there can be as little doubt that the short limitation prescribed for the sale of the property conveyed, was not, in itself, fraudulent, under the statute or otherwise, it can only operate as some evidence of a fraudulent intent; but unless the object was to delay creditors, the temporary restriction on the power to sell was not fraudulent—this is proved even by the cases cited in the petition.

The short period of three months delay of a sale, professedly to fatten stock and mature a growing crop to sell for the benefit of creditors, is not *in itself* fraudulent under the statute; it can only operate *as some* evidence of such an intent.

In *Ward et al.* vs *Trotter et al.* (*3 Mon.* 1.) one *Kelly* conveyed to *Ward* all his estate in trust for preferred creditors, with power to sell *after one year*, reserving to the grantor the use of the property, *and the right of disposing of it or any of it* with *Ward's* consent, without any other ostensible or presumable motive for *either the* conveyance or the delay of sale, than *a wish to prevent his creditors from selling his property for less than it was worth*, which was *avowed in the deed itself as the object of the incumbrance.* And, in that case, this Court said that "it is, in fact, the *intention* which makes a deed fraudulent," and decided that the avowed intention of *Kelly's* conveyance should be deemed fraudulent, because his purpose, as avowed, was to delay his creditors, and prevent them altogether from selling his property unless it would sell without sacrifice. It was not the restriction as to the time of selling, but the *motive* of the conveyance itself, that is to hinder and delay creditors, which this Court adjudged illegal and fraudulent.

And in the other case cited in the petition, the same obvious principle was recognised, for this Court virtually said in that case, that it was not a *delay* in the remedy of creditors, but the *illegal intention* to hinder or delay them which was fraudulent in law.

This case is distinguished from that of *Ward et al.* vs *Trotter et al.* (3 *Mon.* 1) where the object (to prevent a sacrifice of property) was avowed on the face of the deed.

And so we say again in this case; the postponement of the sale for about three months was not, *per se*, fraudulent, but if the *object* of making the conveyance or of thus limiting the power to sell, was *to delay creditors*, then, in the language of the statute, the conveyance was made with the "*intention to delay*" them, and was consequently illegal and fraudulent; but the motive, as announced in the deed, was not, as in *Ward et al.* vs *Trot-*

*ter et al.*, to prevent a sacrifice of the property, but to secure to *all* creditors *pari passu*, the utmost amount that the property could, by obviously prudent means, be made to produce. This Court has never said, nor can ever say, that such an intention as that manifested on the face of *Heatherly's* conveyance proves, as a matter of inflexible law, that he made that conveyance with the fraudulent *intent to delay* his creditors. No enlightened Court has, so far as we know or believe, ever so said, and this point has been expressly adjudged in *Vernon et al.* vs *Morton et al.* (*8th Dana*, 247, 265.) The question was one of *intention in fact*, which the jury alone had a right to decide. The jury in this case decided that there was no fraudulent intention; and we are still of the opinion that the facts, all of which are not alluded to in the petition, authorized the verdict.

There was no proof that the debt to the trustee, as described in the deed, was fraudulent.

Nor can we perceive why that which would, as admitted in the petition, have made the Sheriff liable for a *trespass* in taking *Joe* under the execution, did not make him liable for a *conversion*, if, as they elected to do, the persons injured by his tortious act chose to waive the trespass and sue only for the conversion; in this case as in an action of trespass, the taking furnished a cause of action, because the subsequent sale proved that the caption by a levy which, without such sale, would have been an equivocal act, was in fact tortious, or in other words, for an unlawful purpose.

We are still, therefore, of the opinion, that this action was maintainable for the slave *Joe*, as well as for the other property sold by the Sheriff; and we suppose that the fact that *Christopher* was a deputy sheriff, should not shield him from personal responsibility in a Court of Justice for his own voluntary and tortious act.

We have neither time nor disposition to respond on other points—our opinion remains unchanged on the whole case.

And, therefore, the petition is overruled.

Vol. II. 47

*Margin notes:*

CHRISTOPHER
*vs*
COVINGTON AND SMITH.

Where the act of taking amounts to a trespass, plaintiff may waive the trespass and sue alone for a conversion.

A deputy sheriff is not shielded by process from his voluntary and tortious acts.